UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

KAREN D. R.,[1]

    **Plaintiff,**

v.                                                                Civil Action No. 2:22cv259

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff Karen D. R. seeks judicial review of the Commissioner of Social Security's denial of her claim for disability benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Specifically, Plaintiff contends that the Commissioner's Administrative Law Judge ("ALJ") improperly evaluated the medical opinions resulting in a residual functional capacity ("RFC") that she alleges is not supported by substantial evidence. The action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. This Report finds the ALJ erred by misattributing certain medical opinions and—as a result—failing to comply with the Social Security Administration ("SSA") rules' requirement to address all opinion evidence in arriving at the RFC. The Report therefore recommends that the court grant Plaintiff's

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

motion for summary judgment, and remand the decision of the Commissioner for further proceedings.

## I.     **PROCEDURAL BACKGROUND**

On November 12, 2019, Plaintiff applied for DIB and SSI.[2] (R. 103, 117). Plaintiff alleged disability beginning June 1, 2019. Id. Plaintiff claimed disability based on depression and anxiety disorder. Id. The state agency denied her applications initially and on reconsideration. (R. 131-36). She then requested an administrative hearing, which was held on August 18, 2021. (R. 46-76). Plaintiff was represented at the hearing, and an impartial vocational expert ("VE") testified. Id. The ALJ found that Plaintiff was not disabled during the period alleged. (R. 26, 38-39). Plaintiff appealed the ALJ's decision, and the Appeals Council denied Plaintiff's request for review. (R. 1-3).

Plaintiff then filed her complaint in this court. Compl. (ECF No. 1). Plaintiff seeks judicial review of the Commissioner's final decision that she was not entitled to an award of DIB or SSI, claiming that the decision of the Commissioner of Social Security is "not supported by substantial evidence and [is] contrary to law and regulation." Id. ¶ 8 (ECF No. 1, at 2). Plaintiff moved for summary judgment. (ECF No. 13). Plaintiff argues that the case should be reversed or remanded because the ALJ failed to properly evaluate the medical opinion evidence, and the residual functional capacity ("RFC") is inconsistent with credited opinions of the agency physicians. Mem. Supp. Pl.'s Mot. Summ. J. ("Pl.'s Mem.") (ECF No. 14, at 9-16). The Commissioner opposed Plaintiff's motion and moved for summary judgment. (ECF No. 15). The Commissioner argues that the ALJ's decision is supported by substantial evidence, that the ALJ appropriately evaluated

---

[2] Plaintiff previously filed for DIB and SSI on August 22, 2016, alleging disability from April 14, 2016. (R. 80). Those claims were denied initially and again on reconsideration. Id. On September 24, 2018, a different ALJ issued an unfavorable decision which Plaintiff did not appeal. (R. 80-90).

the opinion and other evidence, and that the RFC aligns with the administrative findings. Mem. Supp. Def.'s Mot. Summ. J. & Opp'n Pl.'s Mot. Summ. J. ("Def.'s Opp'n") (ECF No. 16, at 8-16). Plaintiff filed a reply, (ECF No. 17), and the motions were referred to me by standing order, (ECF No. 11). A review of the record establishes that the ALJ erred in evaluating the medical opinion evidence by misattributing opinion evidence offered by a treating physician. As a result of the misattribution, the ALJ's decision fails to comply with the controlling SSA rules, which require evaluation of all the opinion evidence from qualified medical providers.

## II.    FACTUAL BACKGROUND

Plaintiff was 51 years old at the time of alleged onset date. (R. 37). She met the insured status requirements under the Social Security Act through June 30, 2023. (R. 28). She has not engaged in substantial gainful activity since June 1, 2019, the alleged onset date.[3] Id. She has a high school education, completed one year of college, and reported past work as a home health aide. (R. 254).

### A.    Plaintiff's Health Treatment

Plaintiff primarily alleges mental limitations associated with her alleged impairments of depression and anxiety. She also battled and survived breast and ovarian cancers, which she alleges contributed to her mental and physical limitations. Plaintiff's additional severe impairments included osteoporosis and obesity, but the limitations imposed by those conditions were not meaningfully contested. The following review of the medical history relates to the mental limitations most relevant to Plaintiff's arguments in this court.

---

[3] The ALJ noted earnings of over $15,000 in 2019, but nearly all of it was in the first two quarters before her alleged onset date in June. (R. 28).

3

Plaintiff's extensive medical record reflects multiple cancer diagnoses, which were primarily treated with surgery and medication. See, e.g., (R. 1219-21; 1372-74). The medications produced several side effects, notably bone loss which resulted in worsening osteopenia. (R. 1234, 1277-78). Plaintiff testified that her cancers had been successfully treated, and that she currently takes medication to prevent recurrence. (R. 61).

In addition to the physical effects, Plaintiff's history of battling cancer exacerbated mental health symptoms for which she regularly sought treatment. During the relevant period, she primarily consulted with psychotherapist Jane Brown, Ph.D. of Christian Psychotherapy Services. (R. 1153-1214). During her visits, Plaintiff often reported difficulty sleeping, panic attacks, difficulty breathing, and self-isolation. (R. 1187, 1193, 1196). Dr. Brown frequently found her to have a depressed mood, but an otherwise organized thought process; reality based, yet preoccupied, thought content; appropriate behavior; and fair-to-good attention, concentration, insight, and judgment. See, e.g., (R. 1153-54, 1156-57, 1162-63, 1172, 1180-81). Other healthcare providers, including her primary treating physician, Jo-Anne Guzman-Lee, M.D., consistently reported generally benign mental status findings, including normal memory, intact thought process, normal judgment, insight, mood, and affect. See, e.g., (R. 759-60, 779, 801, 859, 1376-77, 1406, 1442).

In Dr. Brown's notes from Plaintiff's regular psychotherapy appointments, between June and December 2020, Plaintiff described being the primary caregiver for her young grandchildren. See (R. 1165, 1171, 1187). On October 28, 2020, she stated she "continues to do better emotionally since staying home for the most part and not taking on more responsibilities," noting she "still has four grandchildren (ages 4 to 7) many days." (R. 1180). On December 4, 2020, Plaintiff described two panic attacks that "caused a lot of distress," including during a hair

4

appointment when she had to keep taking breaks to "settle herself down." (R. 1187). But she also reported attending a comedy club to see a friend perform. Id. She stated that her grandchildren were "very dependent on her," which was draining, but also "distracting from her pain and anxiety." Id.

B. **Opinion Evidence**

    1. **Plaintiff's Treating Providers**

        a. **Jane Brown, Ph.D.**

Dr. Brown submitted two different forms assessing Plaintiff's mental residual functional capacity ("MRFC"). (R. 754-56, 1348-50). On the first, in July 2020, Dr. Brown checked boxes reflecting "marked deficits in emotional and cognitive functioning." (R. 754-56). Specifically, of three listed activities related to "Understanding and Memory," Dr. Brown found that Plaintiff was moderately limited in her ability to perform two and markedly limited in her ability to perform the other. (R. 754). Of eight activities listed under the heading "Sustained Concentration and Persistence," she checked boxes indicated that Plaintiff was moderately limited in three activities and markedly limited in the remaining five activities. (R. 754-55). As for "Adaptation," Dr. Brown found Plaintiff markedly limited in her ability to perform all four tasks listed under that category. (R. 755). However, of the five activities related to "Social Interaction," she found that Plaintiff was moderately limited in only one activity and had no significant limitations in the other four. Id. Dr. Brown attributed Plaintiff's marked limitations to her previous cancer diagnoses, and the side effects of Tamoxifen. (R. 756).

In July 2021, Dr. Brown completed another MRFC form. (R. 1348-50). This time, she found one moderate limitation and two marked limitations in "Understanding and Memory; one moderate limitation and seven marked limitations in "Sustained Concentration and Persistence;"

and one moderate limitation and three marked limitations in "Adaptation." (R. 1348-49). In "Social Interaction," Dr. Brown found that Plaintiff was moderately limited in her ability to perform two of the listed activities, but had no significant limitations with respect to the remaining three. (R. 1349). She attributed her assessment to Plaintiff's diagnoses of "severe depression and panic attacks, as well as chronic pain from her history of cancer treatment." (R. 1350). She noted that Plaintiff had experienced multiple deaths of family and friends in the past year, exacerbating her depression and anxiety. Id. She observed that Plaintiff was able to help care for her grandchildren, but would be "unable to work in any capacity." Id.

      **b.**     **Jo-Anne Guzman-Lee, M.D.**

In addition to Dr. Brown's opinions, Plaintiff also submitted an MRFC assessment dated August 20, 2020, by her treating physician, Dr. Jo-Anne Guzman-Lee. (R. 827-31). The ALJ misattributed this opinion to Dr. Brown. See (R. 36) (citing R. 827-31). Like Dr. Brown, Dr. Guzman-Lee concluded the Plaintiff had multiple moderate and marked limitations across several categories of functioning. Specifically, Dr. Guzman-Lee found that Plaintiff had one moderate and one marked limitation in "Understanding and Memory;" four moderate and two marked limitations in "Sustained Concentration and Persistence;" three moderate limitations in "Social Interaction;" and two moderate limitations in "Adaptation."[4] (R. 827-28). She attributed these limitations to severe depression and anxiety resulting from the cancer diagnosis, and her inability to tolerate medications. (R. 828). She also opined on physical limitations related to side effects from her medications. (R. 829).

---

[4] Dr. Guzman-Lee also found that Plaintiff was not significantly limited in her ability to perform one listed activity related to "Understanding and Memory;" two listed activities related to "Sustained Concentration and Persistence;" two listed activities related to "Social Interaction;" and two listed activities related to "Adaptation." (R. 828-29).

### 2. State Agency Psychologists

#### a. Nicole Sampson, Ph.D.

On April 16, 2020, state agency psychiatric consultant Nicole Sampson, Ph.D. completed an MRFC assessment at the administrative level. (R. 113-14, 127-29). Dr. Sampson found Plaintiff not significantly limited in her ability to carry out simple instructions, perform under a schedule, and sustain an ordinary routine, and moderately limited in her ability to complete a normal workweek, and perform at a consistent pace. Id. She concluded Plaintiff "retains the capacity to execute simple instructions, and possibly some complex instructions," as could also "focus and concentrate for 2 hour periods to complete a normal 8 hour work day." (R. 114, 128). She stated Plaintiff had no psychiatric hospitalizations, performed activities of daily living such as her two grandchildren, and had reported being able to shop, drive, and get along with others. Id.

#### b. Joseph Leizer, Ph.D.

On December 15, 2020, at the reconsideration level, state agency consultant Joseph Leizer, Ph.D. largely echoed Dr. Sampson's earlier findings. (R. 142-43, 150-51). He found Plaintiff not significantly limited in her ability to carry out short, simple instructions; perform activities on a schedule, including maintaining regular attendance within customary tolerances; and make simple work-related decisions. Id. He concluded she was moderately limited in her ability to maintain concentration and attention for extended periods, carry out detailed instructions, and complete a workday without an unreasonable number or length of rest periods. Id. In summary, he found Plaintiff had the ability to maintain attention and perform simple tasks for four-hour periods over an eight-hour workday and 40-hour work week, with normal breaks. (R. 143, 151). He concluded she would not require special supervision and would be able to make simple and detailed work-related decisions, maintain attendance, and be on time. Id.

7

## C. Testimony Before the ALJ

At the hearing in August 2021, the ALJ received testimony from Plaintiff and a vocational expert. (R. 46-76).

### 1. Plaintiff's Testimony

Plaintiff testified that she lived in a house with her 8-year old granddaughter. (R. 54-55). She has a high school diploma and some college, and last worked in 2019. (R. 56). She stopped working due to a new cancer diagnosis. Id. Plaintiff testified that she had been receiving unemployment benefits and certified her ability to work, but believed she could not find work due to her medical history. (R. 56-57). Although she applied for information clerk positions, she stated she did not believe she could hold such jobs due to memory problems. (R. 58). Plaintiff described memory loss and panic attacks as the primary limitations associated with her mental health impairments. (R. 60). She testified that she no longer flies but does drive. (R. 60-61). She does not take medication all the time, but has it on hand in case she encounters a situation that causes her to panic, such as driving across bridges. (R. 61). She said she did not need her medication if she was going somewhere close to home, like the grocery store. Id.

Plaintiff testified that she did not feel it would be "safe" to work due to her panic attacks. (R. 62). However, she said she could follow written and verbal instructions. (R. 63). She used a cell phone to play games, watched TV, and managed her medical care, grocery shopping, and meals. (R. 63-65). However, her memory loss had caused problems, such as paying bills twice or losing track of her medications. (R. 64, 67-68). She said her treating providers attributed these memory issues to "chemo brain." (R. 68).

### 2. Testimony from VE Patricia Murphy

VE Patricia Murphy characterized Plaintiff's previous elder care position transporting patients as medium, unskilled work. (R. 71). The ALJ's hypothetical for the VE posited a person with the same age, education, and work experience as Plaintiff with the following limitations:

> able to lift and/or carry 20 pounds occasionally and 10 pounds frequently, but push/pull is limited to frequent with the bilateral upper extremities, able to sit six hours and stand and/or walk six hours in an eight-hour day, frequently climb ramps and stairs, never climb ladders, ropes, scaffolds, frequently balance, frequently stoop, frequently kneel, occasionally crouch, and occasionally crawl, reaching above the shoulder is limited to occasional with the bilateral upper extremities, able to concentrate in the work place for two hours before requiring a break, limited to perform simple, routine tasks, frequently respond appropriately to changes in a routine work setting, and would be off task 5% of the time in a normal workday.

(R. 72). The VE testified that jobs would be available to such a person, identifying usher (DOT 344.677-014) with 5,000 jobs nationally; marker (DOT 209.587-034) with the number of jobs nationally reduced to 60,000 due to Plaintiff's reaching limitation; and cashier II (DOT 211.462-010) with the number of jobs nationally, again accounting for the reaching limitation, reduced to 250,000. (R. 72-73). The ALJ then asked if jobs would be available if the time off task was increased from 5% to 15% or more, to which the VE answered, "No." (R. 73). In response to questions from Plaintiff's counsel, the VE stated that reducing the lifting limitation to five pounds would eliminate some, but not all, of the three available positions identified. (R. 75). However, none of the positions would permit unscheduled breaks at the discretion of the employee. Id.

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Mastro v.

Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but the evidence may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390; see also Lewis v. Berryhill, 858 F.3d 858, 868 (4th Cir. 2017). Ultimately, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

Plaintiff's brief identifies two errors in the ALJ's decision that she claims warrants remand. She contends that the ALJ improperly evaluated opinion evidence from her primary provider of psychotherapy, Dr. Brown, and that the ALJ's RFC opinion is inconsistent with credited opinion testimony from the agency physicians involved during Plaintiff's administrative assessment. As explained below, this Report finds error in the ALJ's analysis of the opinion evidence—but not the precise error identified in Plaintiff's brief. Accordingly, this Report concludes that remand is

10

warranted, and therefore recommends that the court GRANT Plaintiff's Motion for Summary Judgment and remand the Commissioner's decision for further proceedings.

A.  **Framework for SSA Disability Evaluation**

A person may file for and receive disability insurance benefits under the Social Security Act if he or she meets the insured status requirements of 42 U.S.C. § 423(c)(1), is under the retirement age as defined in § 416 of the Act, and is under a disability as defined in § 423(d). As relevant here, the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); accord 20 C.F.R. § 404.1505(a). An impairment renders an individual disabled only if it is so severe as to prevent the person from engaging in his or her prior work or any other substantial gainful activity that exists in the national economy. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

SSA regulations set out a sequential analysis which ALJs use to make their determination. 20 C.F.R. § 404.1520(a)(4). Specifically, the regulations direct the ALJ to answer the following five questions:

1. Is the individual involved in substantial gainful activity?
2. Does the individual suffer from a severe impairment or a combination of impairments that meets the durational requirement and significantly limits his or her physical or mental ability to do basic work activities?
3. Does the individual suffer from an impairment(s) that meets or equals a listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (a "listed impairment") and meets the durational requirement?
4. Does the individual's impairment or combination of impairments prevent him or her from performing any relevant past work?
5. Does the individual's impairment or combination of impairments prevent him or her from performing any other work?

11

An affirmative answer to question one, or a negative answer to questions two, four, or five, means the claimant is not disabled. An affirmative answer to questions three or five establishes disability. The claimant bears the burden of proof during the first four steps; if the analysis reaches step five, the burden shifts to the Commissioner to show that other work suitable to the claimant is available in the national economy. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Jolly v. Berryhill, No. 16-cv-38, 2017 WL 3262186, at *6 (E.D. Va. July 13, 2017).

The SSA considers all material evidence in evaluating whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(3); 404.1520b. This includes "(1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age." Jolly, 2017 WL 3262186, at *6 (citing Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967)). Ultimate responsibility for making factual findings and weighing the evidence rests with the ALJ. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)).

**B.   The ALJ Decision Currently Before the Court for Review.**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from her alleged disability onset date until the hearing date. (R. 28). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: status post bilateral mastectomy for breast cancer, status post hysterectomy and bilateral oophorectomy for ovarian cancer, osteoporosis, obesity, major depressive disorder, and anxiety with panic disorder. (R. 28-29). At step three, the ALJ found that Plaintiff did not suffer from a listed impairment or combinations of impairments that met or medically equaled the severity of one of the listed impairments. (R. 29-31). The ALJ then developed a finding regarding Plaintiff's RFC. He determined Plaintiff was able

>to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: she can lift and/or carry 20 pounds occasionally and 10 pounds frequently, and can frequently push or pull with her bilateral upper extremities. She can sit for six hours in an eight-hour workday, and stand and/or walk for six hours in an eight-hour workday. She can frequently climb ramps or stairs, but never climb ladders, ropes, or scaffolds. She can frequently balance, stoop, or kneel, and can occasionally crouch or crawl. She can occasionally reach above shoulder height with her bilateral upper extremities. She can concentrate in the workplace for two hours before requiring a break. She can perform simple, routine tasks. She can frequently respond appropriately to changes in a routine work setting. She can do work that allows her to be off task for 5% of the time in a normal workday.

(R. 31-36). At step four, the ALJ concluded that Plaintiff could not perform any past relevant work. (R. 36-37). At step five, the ALJ found work in the national economy Plaintiff could perform and therefore found that she was not disabled. (R. 37-39).

C.  **The ALJ Erred in Evaluating the Medical Opinions Under the Controlling Regulations by Misattributing a Treating Physician's Opinion.**

Dr. Brown, Plaintiff's treating psychotherapist, submitted two MRFC assessments and opined that Plaintiff had many moderate to marked limitations. (R. 754-56; 1348-50). Dr. Guzman-Lee, Plaintiff's primary care provider, also submitted an MRFC assessment and opined that Plaintiff had certain moderate to marked limitations. (R. 827-29). Believing all three of these opinions were issued by Dr. Brown, the ALJ assessed them collectively rejected them as unpersuasive. (R. 36). Plaintiff—who also appears to believe Dr. Brown issued all three opinions—contends the ALJ erred in finding the opinions unpersuasive because he failed to adequately explain his reasons for doing so. Pl.'s Mem. (ECF No. 13-16). Regardless of whether Plaintiff is correct regarding the ALJ's assessment of the two opinions authored by Dr. Brown, I conclude that, because the ALJ failed to correctly evaluate Dr. Guzman-Lee's opinion as required by the applicable regulations, remand is required.

13

### 1. The ALJ failed to evaluate opinion testimony from Dr. Guzman-Lee by misattributing the opinion to Dr. Brown.

Under the rules,[5] the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ considers their overall "persuasiveness," id., and while the ALJ may consider many factors in evaluating persuasiveness, he or she must explain only "the most important factors" of "supportability and consistency," § 404.1520c(b)(2). Although the rule changed the way in which medical opinions were evaluated, it preserved the requirement that the decision articulate the persuasive force of "all of the medical opinions" at the Source Level. 20 C.F.R. § 404.1520c(b)(1). Source Level analysis permits the ALJ to combine in a single explanation an assessment of all medical opinions from a single source using the most important factors of supportability and consistency. Id. Where the ALJ fails to evaluate "all of the medical opinions," remand is required. See Lorraine R. v. Comm'r, SSA, No. 3:20-cv-396, 2022 WL 4232839, at *5-6 (S.D. Ohio Sept. 14, 2022) (finding remand necessary where the ALJ did not evaluate any of a treating provider's multiple opinions, and only acknowledged some of them); Jamie H. v. Kijakazi, No. 20-cv-634, 2022 WL 834962, at *4 (N.D. Okla. Mar. 21, 2022) (concluding that the ALJ committed "clear legal error" when "the undersigned [could not] tell from the ALJ's decision that she was even aware of [the provider's] opinion").

In this case, the ALJ discounted Dr. Brown's two opinions and Dr. Guzman's single opinion, finding they were unsupported by Dr. Brown's "own psychotherapy records," and inconsistent with the "mental status examination findings from other medical care providers,"

---

[5] On January 18, 2017, the SSA adopted new rules for considering medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c. The new rules apply to all claims filed after March 27, 2017. Id. Because Plaintiff filed her claims on November 12, 2019, (R. 103, 117), the new rules apply.

14

including Dr. Guzman-Lee. (R. 36). However, these findings were premised on three opinions from Dr. Brown, and none from Dr. Guzman-Lee. In other words, as to Dr. Brown, the ALJ assessed both of her two opinions and an additional opinion she did not provide. As to Dr. Guzman-Lee, the ALJ assessed no opinion at all.

The ALJ's misattribution of Dr. Guzman-Lee's MRFC assessment produces two errors requiring remand. First, it calls into doubt the ALJ's conclusion that the two opinions authored by Dr. Brown were unpersuasive—a conclusion which he premised in part on the opinions' lack of consistency with Dr. Guzman-Lee's mental status examinations. While these inconsistencies may still detract from the persuasive force of Dr. Brown's two assessments, the court is unable to conclude that Dr. Guzman-Lee's opinion testimony—which was similar to Dr. Brown's—would have no effect on that consistency evaluation. See Pang v. Kijakazi, No. 21-cv-43, 2022 WL 214795, at *3 (D. Haw. Jan. 1, 2022) ("[T]he ALJ committed legal error in attributing to Dr. Rowan opinions and/or limitations that the record does not reflect Dr. Rowan made. Moreover, because it appears that this misattribution may have affected the ALJ's analysis of Dr. Rowan's actual opinions, the Court cannot find that it was harmless and must remand."); Fairley v. Astrue, No. CV-08-5015, 2008 WL 4962678, at *5 (E.D. Wash. Nov. 19, 2008) (holding that, under the old SSA rules, an ALJ erred by rejecting a treating provider's opinion on the basis of a statement not attributable to him); but see David C. v. Comm'r of Social Security, 6:21-CV-6480, 2023 WL 2379007, at *8 n.3 (W.D.N.Y. Mar. 6, 2023) (finding harmless error where an ALJ misattributed an opinion written by Plaintiff's orthopedist to Plaintiff's primary physician—who had issued four other opinions in the record—because the primary physician's other opinions endorsed the restrictions imposed in the misattributed opinion, and because the ALJ had found the primary

physician's various opinions inconsistent with each other on the basis of other evidence in the record besides the misattributed opinion).

More importantly, however, the ALJ's opinion failed to subject Dr. Guzman-Lee's opinion to the Source Level analysis required by SSA rules. While it is true that Dr. Guzman-Lee's opinion was described and analyzed in the ALJ's decision, that analysis is insufficient to permit meaningful judicial review. The entire assessment of Dr. Guzman-Lee's opinion—issued in August 2020—proceeded on the mistaken basis that Dr. Brown had prepared it just one month after issuing her first MRFC assessment in July 2020. (R. 35-36). To the contrary, Plaintiff had obtained two similar opinions, close in time, from two different treating physicians. It may be that on remand the ALJ will make a similar assessment of Dr. Guzman-Lee's opinion based on whether the limitations imposed therein are supported by and consistent with other medical evidence in the record. But the court cannot supply that assessment in the first instance, and therefore remand is required. See Lorraine R., 2022 WL 4232839, at *5-6; Jamie H., 2022 WL 834962, at *4.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the court GRANT the Plaintiff's Motion for Summary Judgment (ECF No. 13), DENY Commissioner's Motion for Summary Judgment (ECF No. 15), and REMAND the Commissioner's decision for further proceedings.

## VI. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C.

§ 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
July 11, 2023